**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| GRUPPO EF TECNOLOGIE USA, LLC, | CASE NO. 4:25-CV-01531-BYP |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| v. | |
| AIR LIQUIDE ADVANCED TECHNOLOGIES U.S., LLC and L'Air Liquide S.A., | |
| Defendants. | |

**AMENDED COMPLAINT**

Gruppo EF Tecnologie USA, LLC ("Gruppo"), in its capacity as sole assignee of the legal and equitable claims of Ohio Valley Concrete LLC ("OVC"), submits this Amended Complaint against Defendants L'Air Liquide S.A. ("Air Liquide") and Air Liquide Advanced Technologies U.S. LLC ("ALATUS") and alleges the following.

**PROCEDURAL BACKGROUND**

1. On July 23, 2025, Defendant Air Liquide Advanced Technologies U.S. LLC ("ALATUS") removed this action from the Court of Common Pleas of Columbiana County, Ohio, to this Court pursuant to 28 U.S.C. §§ 1332 and 1441, asserting diversity jurisdiction.

2. On September 16, 2025, after an assignment of interests that transferred all of OVC's claims to Gruppo (and extinguished any claims OVC would otherwise hold), the Court granted OVC's motion to dismiss claims against Gruppo and to substitute Gruppo as the real plaintiff in interest. *See* ECF No. 21. The Court directed that Gruppo be dropped as a party

1

defendant under Fed. R. Civ. P. 21 and, pursuant to Fed. R. Civ. P. 25(c), be substituted as plaintiff in place of OVC.

3.      Under the assignment to Gruppo of all claims from OVC against ALATUS, Air Liquide, or both, and pursuant to the Court's Order, Gruppo now stands in the position of OVC as plaintiff.  For convenience, the claims of OVC that have been assigned to Gruppo are described herein as the claims of "Plaintiff."

### NATURE OF THE ACTION

4.      This case arises out of a deliberate scheme by Defendant ALATUS and Defendant Air Liquide to trumpet fulfillment of their global climate commitments to investors and the public while cheating an Ohio company (OVC) that made their projects possible.

5.      On April 10, 2024, Defendant Air Liquide, a French multinational publicly traded on Euronext Paris, announced two renewable natural gas (RNG) projects that would process dairy waste as part of its ADVANCE 2025 plan and its 2050 net-zero pledge to be carbon neutral.  *See* **Exhibit A**; *see also* https://www.airliquide.com/group/press-releases-news/2024-04-10/air-liquide-further-develops-its-biomethane-capacities-us-two-new-production-units (last checked September 29, 2025).

6.      Defendant ALATUS, Air Liquide's U.S. arm, was directed to execute the projects in the United States, as any projects in the United States managed by Defendant ALATUS would be included in Defendant Air Liquide's carbon neutral calculations.

7.      OVC was hired, with the help of Gruppo in its own capacity, to work on the project.  But rather than pay for labor, materials, and know-how provided by Plaintiff and Gruppo, Defendant Air Liquide and Defendant ALATUS chose exploitation. They squeezed

2

Plaintiff and Gruppo for schedules, designs, suppliers, and manpower, then starved them of payment and conspired to cut them out entirely.

8.    The larger objective was simple: strip Plaintiff and Gruppo of its role as a "middle man," extract its methods and supplier relationships, and then run all current and future projects themselves.

9.    Defendant Air Liquide and Defendant ALATUS treated the Pennsylvania build as a testbed—intentionally harvesting know-how and designs from Plaintiff's Ohio crews (approximately 35-50 employees who traveled daily from their homes in Ohio to the worksites), then stripping identifiers and circulating RFPs to suppliers—so that the Michigan and other subsequent projects could be executed without Gruppo or Plaintiff.

10.    Plaintiff, an Ohio-based company, deployed dozens of Ohio workers daily to Pennsylvania, provided their knowledge of specialized Octaform concrete systems, and performed indispensable sitework. ALATUS demanded more schedules and manpower while refusing to release any payments.

11.    Plaintiff made it clear that it could not continue to front payroll while $2 million remained unpaid. Air Liquide and ALATUS ignored these requests and continued to extract value from Plaintiff while withholding over $2 million.

12.    Defendant Air Liquide's senior executives showcased both projects to investors as proof points of their climate-friendly strategy to be carbon neutral, while Defendant ALATUS implemented the playbook to cut out Plaintiff.

13.    The result: Plaintiff was left unpaid, jeopardizing its viability as a company and the livelihoods of the workers who lived in and commuted from Ohio, while Defendant Air

3

Liquide and Defendant ALATUS enriched themselves and positioned themselves to control the entire Renewable Natural Gas ("RNG") rollout.

## THE PARTIES

14.     Plaintiff OVC is an Ohio limited liability company headquartered in Columbiana County, Ohio. It has one member, a citizen of Ohio.

15.     Defendant ALATUS is a Delaware limited liability company. It is wholly owned and controlled by Defendant Air Liquide, a citizen of France.  Defendant ALATUS hired Gruppo and Plaintiff, directed day-to-day project activity, issued directives to Plaintiff, withheld payments, and sought to assume various subcontracts after termination.

16.     Defendant Air Liquide is a French société anonyme headquartered in Paris, France whose shares are traded on Euronext Paris. Acting through its Chief Executive Officer, its Executive Committee, and its Global Markets & Technologies division leaders, Air Liquide conceived, financed, and publicly announced the Pennsylvania and Michigan projects, embedded its personnel in oversight, and tied the projects directly to its ADVANCE 2025 plan and its 2050 "net-zero" commitment.

17.     Gruppo is a limited liability company organized under the laws of the State of Delaware.  It has one member, a citizen of Italy.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are completely diverse and the amount in controversy is over $75,000.

19.     This Court has personal jurisdiction over Defendant ALATUS pursuant to Ohio Rev. Code § 2307.382(A)(1), (A)(3), and (C), and consistent with the due process of the U.S. Constitution.

20.     Defendant ALATUS engaged Plaintiff, an Ohio contractor, for the RNG projects, relied on Plaintiff's Ohio labor force, equipment, and knowledge, and sent repeated communications—including invoices, assurances, rejections, and schedule demands—into Ohio, where they were received and acted upon.

21.     Plaintiff's Ohio crews of 35-50 employees commuted daily from Ohio when working on the projects.

22.     Defendant Air Liquide caused injury in Ohio by withholding over $2 million, and simultaneously used Plaintiff's Ohio-based expertise for the Michigan project and other future projects.

23.     The Pennsylvania and Michigan projects were conceptualized, announced, and managed together as part of Defendant Air Liquide's ADVANCE 2025 plan and its 2050 net-zero pledge. Defendant ALATUS leveraged Plaintiff's Ohio work on the projects to extract know-how and methods for the Michigan project.

24.     By treating the projects as a linked rollout, Defendant ALATUS ensured Plaintiff's Ohio-based contributions were indispensable to both projects. Plaintiff's claims arise directly from this course of conduct deliberately anchored in Ohio.

25.     This Court has personal jurisdiction over Defendant Air Liquide pursuant to Ohio Rev. Code § 2307.382(A)(1), (A)(3), and (C), and consistent with due process.

26.     Defendant Air Liquide conceived, financed, and publicly announced both projects together, directed Defendant ALATUS as its agent to execute them, relied on Plaintiff's Ohio labor, and embedded Plaintiff's work in its global investor messaging.

27.     Defendant Air Liquide used Plaintiff's Ohio-based work as a testbed for Michigan, intentionally gathering knowledge of methods and suppliers with the intent to cut out Plaintiff, while knowing the foreseeable harm of nonpayment would fall on Plaintiff in Ohio.

28.     Venue is proper under 28 U.S.C. § 1391(b) because Plaintiff resided in Ohio and sustained injury here, and the conduct of Defendant Air Liquide and Defendant ALATUS was directed into this District.

## FACTUAL ALLEGATIONS

29.     Plaintiff was retained to perform critical concrete and structural work in Pennsylvania and Michigan.

30.     Dozens of Ohio workers commuted daily, staging equipment and resources in Ohio. Plaintiff's work was indispensable to the Pennsylvania site.

31.     After Plaintiff had begun the work, Defendant ALATUS demanded Plaintiff's schedules and pushed it to work faster.  It accelerated tank construction while rejecting additional payment requests as purportedly "not tied to milestones."

32.     Prior to filing of the Complaint, Plaintiff had completed over $2 million in work but remained unpaid on submitted invoices totaling $2,082,332.00.

33.     Plaintiff warned ALATUS that it could not keep advancing payroll while more than $2 million in payments remained outstanding.

34.     Plaintiff stressed that the situation was unsustainable because it was working without reimbursement and exhausting its resources. Plaintiff further complained that Air Liquide continued to demand more schedules and manpower while refusing to release funds and was exploiting Plaintiff's schedules and methods.

6

35.     Defendant ALATUS ignored these pleas and continued to insist that Plaintiff work without payment.

36.     In late 2024, Defendant ALATUS attempted to assume subcontracts and transfer permits into its own name, continuing to rely on Plaintiff's deliverables.

37.     For Michigan, Defendant ALATUS stripped identifiers from drawings submitted by Plaintiff and circulated RFPs based on Plaintiff's work, with the intent of excluding Plaintiff.

38.     The scheme was deliberate: Defendant Air Liquide and Defendant ALATUS sought to extract information from Plaintiff and then running all current and future projects themselves.

39.     Suppliers reported that Defendant ALATUS intended to exclude Plaintiff altogether.

40.     Defendant Air Liquide benefitted by publicly touting both projects to investors and regulators while using Plaintiff's work product to maintain credibility on climate targets.

41.     Defendant Air Liquide and Defendant ALATUS left Plaintiff unpaid, caused foreseeable harm in Ohio, and enriched themselves at Plaintiff's expense.

**Count I – Quantum Meruit**

42.     Plaintiff realleges paragraphs 1 through 41 as though fully set forth herein.

43.     Plaintiff furnished valuable labor, services, and materials, including concrete, sitework, manpower, and specialized knowledge, at the request of Defendant ALATUS and with the knowledge and oversight of Defendant Air Liquide.

44.     Defendant ALATUS and Defendant Air Liquide accepted and benefited from Plaintiff's work, using it to advance construction in Pennsylvania, to develop supplier and

7

engineering frameworks for Michigan, and to maintain Defendant Air Liquide's public climate strategy and with the intention of using the work on future projects.

45.     Under principles of equity and good conscience, Defendant ALATUS and Defendant Air Liquide are obligated to pay Plaintiff the reasonable value of that work, in an amount not less than $2,082,332.00, plus interest.

### Count II – Unjust Enrichment

46.     Plaintiff realleges paragraphs 1 through 45 as though fully set forth herein.

47.     Defendant ALATUS was enriched by Plaintiff's labor, materials, and deliverables, and Defendant Air Liquide was enriched by incorporating Plaintiff's work into its global announcements, investor messaging, and climate commitments.

48.     The retention of these benefits without paying Plaintiff is inequitable, as Defendant ALATUS and Defendant Air Liquide knowingly exploited Plaintiff's contributions while withholding payment.

49.     Plaintiff is entitled to restitution in the full amount of the benefit unjustly retained by Defendant ALATUS and by Defendant Air Liquide under the laws of the state of Ohio in amount to be determined by a jury at trial but no less than $20,000,000.

### Count III – Account Stated (Against Defendant ALATUS)

50.     Plaintiff realleges paragraphs 1 through 49 as though fully set forth herein.

51.     Plaintiff rendered invoices and account statements to Defendant ALATUS totaling $2,082,332.00. Defendant ALATUS accepted Plaintiff's work and failed to dispute the invoices within a reasonable time, thereby assenting to the accuracy of the amounts due.

52.     Defendant ALATUS is indebted to Plaintiff on the account stated in the principal amount of $2,082,332.00, together with interest under the laws of the state of Ohio.

**Count IV – Fraudulent Inducement**

53.    Plaintiff realleges paragraphs 1 through 52 as though fully set forth herein.

54.    Defendant ALATUS and Defendant Air Liquide, acting directly and through their project personnel, falsely represented that Plaintiff's invoices would be paid once internal approvals were obtained, and that requests for more payment would be processed in the ordinary course.

55.    These promises were knowingly false when made and were intended to induce Plaintiff to continue supplying schedules, manpower, and technical know-how despite mounting arrears.

56.    Plaintiff reasonably relied on these misrepresentations to its detriment, continuing to mobilize Ohio workers and front payroll costs while Defendant ALATUS and Defendant Air Liquide harvested Plaintiff's methods and suppliers to cut out Plaintiff.

57.    As a direct result, Plaintiff suffered damages, and is entitled to compensatory damages, punitive damages, and all other relief the Court deems just under the laws of the state of Ohio.

**Count V – Promissory Estoppel (Against Defendant ALATUS)**

58.    Plaintiff realleges paragraphs 1 through 57 as though fully set forth herein.

59.    Defendant ALATUS promised that Plaintiff would be paid for work performed and that Plaintiff's payment requests would be addressed.

60.    Plaintiff reasonably relied on Defendant ALATUS's promises by continuing to supply schedules, labor, and equipment at significant cost.

9

61.     Enforcement of those promises is necessary to avoid injustice, and Plaintiff is entitled to damages measured by the full value of the work performed under the laws of the state of Ohio.

**Count VI – Tortious Interference with Contracts and Business Relations**

62.     Plaintiff realleges paragraphs 1 through 61 as though fully set forth herein.

63.     Plaintiff maintained valid business relationships and economic expectancies with multiple suppliers and subcontractors tied to the Pennsylvania and Michigan projects.

64.     Defendant ALATUS interfered with those relationships by issuing directives directly to subcontractors, rejecting payment requests without justification, withholding payment, and attempting to assume subcontracts to exclude Plaintiff.

65.     Defendant Air Liquide interfered with Plaintiff's relationships by directing Defendant ALATUS to use Plaintiff's schedules, methods, and supplier access to build a framework for Michigan and future projects without Plaintiff.

66.     These acts were intentional, without privilege or justification, and caused Plaintiff substantial damages under the laws of the state of Ohio in amount to be determined by a jury at trial but no less than $20,000,000.

**Count VII – Civil Conspiracy**

67.     Plaintiff realleges paragraphs 1 through 66 as though fully set forth herein.

68.     Defendant ALATUS and Defendant Air Liquide combined and agreed to pursue a common plan to deprive Plaintiff of payment, to misappropriate Plaintiff's work product, and to exclude Plaintiff from present and future projects.

69.    Overt acts in furtherance of this conspiracy included false promises of payment, use of Plaintiff's schedules and designs stripped of identifiers, and circulation of RFPs to suppliers based on Plaintiff's work.

70.    Plaintiff suffered damages as a direct and proximate result of the conspiracy and is entitled to recover compensatory and punitive damages under the under the laws of the state of Ohio.

## Count VIII – Declaratory Judgment

71.    Plaintiff realleges paragraphs 1 through 70 as though fully set forth herein.

72.    A real, substantial, and immediate controversy exists concerning Plaintiff's rights and the obligations of Defendant ALATUS and Defendant Air Liquide arising from the Pennsylvania and Michigan projects.

73.    Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment that Plaintiff holds the right to be paid for the labor, services, and materials furnished, and that Defendant ALATUS and Defendant Air Liquide may not retain or use Plaintiff's work product without full compensation under the laws of the state of Ohio.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment as follows:

(a) On Count I (Quantum Meruit), awarding Plaintiff the reasonable value of its labor, services, and materials, in an amount not less than **$2,082,332.00**, together with prejudgment interest;

(b) On Count II (Unjust Enrichment), awarding restitution in the full amount of the benefits unjustly retained by Defendants, in an amount to be determined by the jury but not less than **$20,000,000**;

(c) On Count III (Account Stated), entering judgment against Defendant ALATUS for the principal sum of **$2,082,332.00**, together with interest;

11

(d) On Count IV (Fraudulent Inducement), awarding compensatory damages for the principal sum of **$2,082,332.00**, punitive damages in an amount to be determined at trial, and such other relief as the Court deems just;

(e) On Count V (Promissory Estoppel), enforcing Defendant ALATUS's promises and awarding damages measured by the full value of Plaintiff's work performed, in an amount not less than **$2,082,332.00**;

(f) On Count VI (Tortious Interference with Contracts and Business Relations), awarding compensatory damages in an amount to be determined by the jury but not less than **$20,000,000**, together with punitive damages;

(g) On Count VII (Civil Conspiracy), awarding **compensatory and punitive damages** in an amount to be determined at trial;

(h) On Count VIII (Declaratory Judgment), declaring that Plaintiff holds the right to be fully compensated for its labor, services, and materials furnished, and that Defendants may not retain or use Plaintiff's work product without such compensation; and

(i) Awarding Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,
/s/ *Laura E. Kogan*

Laura E. Kogan (0087453)
Meggan A. Louden (0074215)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: lkogan@beneschlaw.com
mlouden@beneschlaw.com

*Attorneys for Plaintiff Gruppo EF Tecnologie*
*USA, LLC, in its own capacity and as sole assignee*
*of the rights of Ohio Valley Concrete LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of September, 2025, a copy of the foregoing was submitted for electronic filing.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Laura E. Kogan*
Laura E. Kogan (0087453)
*Attorney for Co-Defendant Gruppo EF
Tecnologie USA, LLC, , in its own capacity and as
sole assignee of the rights of Ohio Valley Concrete
LLC*

13