IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GRUPPO EF TECNOLOGIE USA, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>AIR LIQUIDE ADVANCED TECHNOLOGIES U.S. LLC, et al.<br><br>*Defendants.* | Case No. 4:25-cv-01531<br><br>Judge Benita Y. Pearson |

**DEFENDANT AIR LIQUIDE ADVANCED TECHNOLOGIES U.S. LLC'S MEMORANDUM IN SUPPORT OF PETITION TO DISMISS OR TRANSFER AND STAY PENDING COMPLETION OF ARBITRATION**

Joseph R. Spoonster (#0070863)
Nicholas J. Horrigan (#0087345)
HARPST BECKER LLC
1559 Corporate Woods Parkway, Ste. 250
Uniontown, OH 44685
jspoonster@harpstbecker.com
nhorrigan@harpstbecker.com
(330) 983-9971
(330) 983-9981 (fax)

**MEMORANDUM**

This dispute primarily involves construction of a new biogas facility owned by ALATUS in Center Township, Pennsylvania (the "Pennsylvania Project"). ALATUS hired Gruppo as the general contractor for that project and another new biogas facility in Falmouth, Michigan (the "Michigan Project").[1] Gruppo in turn subcontracted with Ohio Valley Concrete LLC ("Ohio Valley") to perform a certain concrete scope of work on the Pennsylvania Project.[2] Gruppo grossly mismanaged the projects and in an effort to try and get one of them completed, the parties entered into an Early Termination Agreement for the Michigan Project so that Gruppo could refocus its efforts on the Pennsylvania Project – which it ultimately proved incapable of doing.[3]

The unsupported – and unsupportable – contentions in Gruppo's Amended Complaint are just the latest in a litany of excuses Gruppo has fabricated in an effort to obscure its abysmal mismanagement. Gruppo held itself out to ALATUS as an expert in the construction of biogas facilities, boldly (but falsely) claiming that it had a wealth of experience building successful biogas projects when in reality it had no experience whatsoever as a general contractor in the United States. The truth was that Gruppo had little relevant experience in the biogas industry and grossly lacked the competence necessary to lead an industrial construction project, as demonstrated by its project mismanagement.

Gruppo promised it would be able to complete the Pennsylvania Project in eighteen months for a total cost of $16.83 million.[4] The reality, however, is thirty-seven months have passed since Gruppo began work, ALATUS has paid it at least $17.1 million for its work on the Pennsylvania

---

[1] See supporting Affidavit attached as Exhibit A, ¶2.
[2] Exhibit A, Affidavit, ¶5.
[3] Exhibit A, Affidavit, ¶7.
[4] Exhibit A, Affidavit, ¶8.

2

Project, and at best, the work is 40% complete.[5] Ultimately, Gruppo's massive budget overruns, significant delays and inability to properly oversee the Pennsylvania Project forced ALATUS to terminate Gruppo.[6]

ALATUS has been left with no choice but to seek recovery of the millions it overpaid Gruppo (and other damages), and has initiated arbitration to do so in accordance with the parties' Agreements.[7] The relationship between ALATUS and Gruppo is governed by the Engineering, Procurement and Construction Agreement for the Pennsylvania and Michigan Projects ("Agreements"), which both contain the following dispute resolution provisions:[8]

> **21. DISPUTE RESOLUTION**
>
> **21.1 Resolution by the Parties.**
>
> **21.1.1 Key Personnel to Resolve.** All claims, disputes and other controversies arising out of or relating to this Agreement (collectively, "**Disputes**") shall initially be submitted in writing to a Senior Officer from each party for resolution by mutual agreement. Any mutual determination by the Senior Officers that is reduced to writing and executed by those Senior Officers shall be final and binding on the parties. If the Senior Officers fail to arrive at a mutual decision as to the Dispute within twenty calendar Days after they both receive written notice of the Dispute, the Dispute shall be settled by binding arbitration in accordance with the terms and provisions set forth in Section 21.2.
>
> **21.1.2 Senior Officers.** For the purposes of this Article 21, the term "Senior Officer" means the chief executive officer, president or any executive or senior vice president of a party.
>
> **21.2 Arbitration Proceedings.**
>
> **21.2.1 Demand for Arbitration.** All arbitration proceedings shall take place in Houston, Texas under the auspices of the American Arbitration Association ("AAA") and shall be conducted in accordance with the AAA Construction Industry Rules then in effect. The demand for arbitration shall be served on the other party to this Agreement. No demand for arbitration shall be made or permitted after the date when the institution of a civil action based on the Dispute would be barred by the applicable statute of limitations or repose of the State.

---

[5] Exhibit A, Affidavit, ¶10.
[6] Exhibit A, Affidavit, ¶11. A copy of the Termination Notice is attached as Exhibit C.
[7] Exhibit A, ¶13; Exhibit B, Arbitration Demand.
[8] Exhibit A, Affidavit, ¶4. Copies of each project Agreement with Terms and Conditions are attached as Exhibits D and E.

As evidenced by OVC's original Complaint, a payment dispute arose between OVC and Gruppo, with OVC claiming Gruppo owed it over $2 million for work performed on the Pennsylvania Project.  OVC's Complaint asserted claims for breach of contract against Gruppo and unjust enrichment against ALATUS.

Following removal to this Court, the Parties engaged in a discovery planning conference, the result of which was the Discovery Plan [Doc #20] filed on September 10, 2025.  According to Section 7 of the Discovery Plan, Gruppo intends on pursuing discovery regarding:

> [C]laims of ALATUS's misconduct including: ***(1) failing to pay Gruppo amounts due or approve change orders; (2) shifting costs downstream***; (3) interfering with Gruppo's subcontractor relationship with Ohio Valley by issuing conflicting directives or withholding funds; (4) receiving the benefit of Ohio Valley's labor and Gruppo's coordination, time and labor without paying; ***(5) inducing Gruppo to proceed with extra work by promising payment or change-order approval that never materialized; and (6) engaging in obstructionist tactics, delays, and intentional underfunding.*** (emphasis added).

Gruppo then took an assignment of OVC's claims and filed an Amended Complaint substituting itself as plaintiff.  Doc #23.  Gruppo avers the assignment "transferred all of OVC's claims to Gruppo (and extinguished any claims OVC would otherwise hold)." Amended Complaint, ¶2.  The Amended Complaint asserts seven causes of action against ALATUS: Quantum Meruit, Unjust Enrichment, Fraudulent Inducement, Tortious Interference with Contracts and Business Relations, Civil Conspiracy and Declaratory Judgment.

While Gruppo attempts to couch the Amended Complaint as asserting claims obtained via assignment from OVC, Gruppo's Discovery Plan reveals that Gruppo clearly believes it has additional (although likely duplicative) claims against ALATUS for allegedly "failing to pay Gruppo amounts due or approve change orders," but did not assert them.  Why Gruppo did this is clear – Gruppo is aware of the obligation to arbitrate, but believes that it may evade arbitration by using OVC as a middleman and recasting its own payment claims as those assigned by OVC.

4

This is not something the law allows, and courts (including the Northern District of Ohio) have long treated with disfavor similar efforts to avoid arbitration through clever pleading tactics. *Real Good Techs., LLC v. Victory Solutions, LLC*, 2015 U.S. Dist. LEXIS 106043, *5 (N.D. Ohio 2015) (plaintiff "cannot plead around the arbitration provision by invoking equitable, rather than legal principles" such as unjust enrichment and promissory estoppel); *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 172 (1st Cir. 2008) (plaintiff "cannot avoid arbitration by dint of artful pleading alone"); *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n.*, 384 F.3d 157, 164 (4th Cir. 2004) (a party "may [not] use artful pleading to avoid arbitration").

## LAW AND ANALYSIS

### I. Standard of review.

Pursuant to Sections 2 and 22.1, the Agreements are to be "governed by and construed in accordance with the laws of [Pennsylvania], without reference to its conflict of Laws principles." Accordingly, ALATUS presents its arguments herein under relevant U.S. Supreme Court, 3rd Circuit, 6th Circuit, and Pennsylvania and Ohio precedent.

"The [Federal Arbitration Act ("FAA")], 9 U.S.C. §§1-16, embodies the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3rd Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, (2006)); *Nations Lending Corp. v. Gomez*, 2024 U.S. Dist. LEXIS 201575, *6 (N.D. Ohio 2024).

9 U.S.C. §3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit is referrable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had

in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. §4 provides in relevant part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in a manner provided for in such agreement.

The FAA requires courts to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement. *Bacon* at 599 (citing 9 U.S.C. §§ 3, 4, 206); *Nations*, supra at *7 ("[l]ike other contracts, arbitration agreements 'are enforced according to their terms.'") (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54) (1995)).

In deciding a motion to compel arbitration, a court may consider the pleadings, documents of uncontested validity, and affidavits submitted by the parties, and decide the matter under a summary judgment standard. *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45 n.1 (3rd Cir. 1991); *Grace v. Steward Health Care Sys., LLC*, N.D. Ohio No. 4:23CV2178, 2024 U.S. Dist. LEXIS 155109 (N.D. Ohio 2024) (Judge Benita Pearson).

"When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Grace*, supra at *6 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

**II.      There is a valid agreement to arbitrate between the Parties.**

To determine whether the parties have agreed to arbitrate, the court must apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

While Gruppo intentionally eschews acknowledging the existence of or referring to the Agreement in its Amended Complaint in order to avoid arbitration, it cannot legitimately dispute the validity or enforceability of the Agreement or the arbitration provision contained therein. In fact, when this case was based on OVC's breach of contract and unjust enrichment claims, Gruppo's stated intention in the Discovery Plan was to investigate claims against ALATUS for "failing to pay Gruppo amounts due or approve change orders" and "inducing Gruppo to proceed with extra work by promising payment or change-order approval that never materialized" – both of which are clearly based on Gruppo's work and a reference to the change order provisions contained in Section 7 of the Agreement.

The Agreement requires Gruppo to submit "All claims, disputes and other controversies arising out of or relating to this Agreement" to a dispute resolution process and then to arbitration if not resolved. This obligation is not dependent on where or how a claim originated, and the fact that Gruppo is ostensibly submitting claims assigned by a subcontractor is of no consequence. Gruppo's claims against ALATUS, whether obtained through its own injury or via assignment, arise out of and relate to the foundational subject matter of the Agreement – the performance of work for the Pennsylvania Project. OVC was Gruppo's subcontractor and, as such, all of OVC's work on the Pennsylvania Project was, by extension, Gruppo's work as defined by the Agreement. Payment to OVC necessarily flowed from and through Gruppo and because OVC's subcontract was with Gruppo (not ALATUS), its entitlement to payment can be no broader than Gruppo's

7

underlying entitlement to payment from ALATUS.

### III. All of Gruppo's claims fall within the scope of the Parties' agreement to arbitrate.

Once a court has found that there is a valid agreement to arbitrate, the determination of whether "a particular dispute is within the class of those disputes governed by the arbitration clause…is a matter of federal law." *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3rd Cir. 2003); *Malik v. F-19 Holdings, LLC*, 2016 U.S. Dist. LEXIS 66644, *5 (6th Cir. 2006) (whether a claim falls within the "scope of the arbitration agreement is a question is governed by federal law under the FAA").

Federal law requires that courts "rigorously enforce agreements to arbitrate." *AOR Mgmt. Co. of v. Mahoning Valley Hematology-Oncology Assocs., Inc.*, N.D. Ohio No. 4:23CV2178, 2023 U.S. Dist. LEXIS 112766 (N.D. Ohio 2023) (Judge Benita Peason). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). There is a presumption of arbitrability in determining whether the particular dispute falls within a valid arbitration agreement's scope. *Century Indem. Co. v. Certain Underwriters at Lloyd'*s, 584 F.3d 513, 524 (3rd Cir. 2009) (quoting *AT & T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986))).

An "order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" with all doubts resolved in favor of coverage. *AT & T*, supra at 650 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960)).

Critically, in assessing whether a particular dispute falls within the scope of an arbitration clause, a court is to "***focus on the factual underpinnings*** of the claim rather than the legal theory

alleged in the complaint." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3rd Cir. 2014) (quoting *Medtronic AVE Inc. v. Advanced Cardiovascular Sys.*, 247 F.3d 44, 55 (3rd Cir. 2001)) (emphasis added). "In so doing, we 'prevent[] a creative and artful pleader from drafting around an otherwise-applicable arbitration clause.'" *Id.* (quoting *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009)).

    A.    **The claims asserted in Gruppo's Amended Complaint cannot be maintained without reference to the Agreement or the relationship between ALATUS and Gruppo.**

Despite its best efforts to plead around the arbitration provision of the Agreement, Gruppo cannot escape its breadth. Indeed, the scope of the arbitration provision is wide-reaching, covering "***All*** claims, disputes and other controversies ***arising out of or relating to*** this Agreement." Numerous courts, including the U.S Supreme Court, have consistently held that similarly broad language serves to encompass tort claims such as fraud, defamation, and unjust enrichment – many of the very same claims Gruppo now purports to assert against ALATUS. See, e.g.,*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (holding arbitration provision stating "any controversy or claim arising out of or relating to this Agreement, or the breach thereof" covered claim for fraudulent inducement); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) (agreement to arbitrate "all disputes arising in connection with this Agreement" governed statutory and common law claims of defamation, trade secret misappropriation, antitrust violations, and violations of the Lanham Act); *YP Corp. v. Sitrick & Co.*, 2005 U.S. Dist. LEXIS 32513 (D. Ariz. 2005) (agreement calling for arbitration of "any controversy, claim or dispute relating to this letter agreement" governed tort claims).

The Sixth Circuit has held the test for determining the scope of an arbitration agreement is "whether the action could be maintained without reference to the contract or relationship at issue."

9

*Lowry v. J.P. Morgan Chase Bank, NA*, N.D. Ohio No. 4:12CV00816, 2012 U.S. Dist. LEXIS 128907, *12 (N.D. Ohio 2012) (Judge Benita Pearson) (quoting *Fazio v. Lehman Bros Inc.,* 340 F.3d 386, 395 (6th Cir. 2003). In *Fazio*, the Sixth Circuit concluded that a claim involving "massive fraud" by a stockbroker who misappropriated millions from his clients' accounts was subject to arbitration. *Fazio*, supra at 391, 398; see also, *Sroka Advance Vehicles, Inc. v. Material Handling, Inc.*, No. 1:11CV0907, 2011 U.S. Dist. LEXIS 80588, 2011 WL 3047720, at *5 (N.D. Ohio 2011) (holding that "broadly-worded arbitration agreement not only governs disputes arising directly under the contract but also applies to other disputes that could not be maintained without reference to the contract or relationship at issue" and compelling arbitration).

The Eastern District of Pennsylvania and 3rd Circuit have similarly held that, if the allegations underlying "plaintiffs' claims 'touch matters' covered by the arbitration clause, 'those claims must be arbitrated,' regardless of whether they are asserted as contract or tort claims." *Hutt v. Xpressbet, LLC*, 2020 U.S. Dist. LEXIS 93899, *18-19 (E.D. Pa. 2020) (quoting *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3rd Cir. 2003)).

Gruppo's claims, albeit not referring to the Agreement (by design), unquestionably "relate to" and "touch matters" covered by the Agreement, such that it would be impossible for Gruppo to pursue those claims without referring to the Agreement, the Pennsylvania and Michigan Projects, or the contractual relationship between itself and ALATUS. Indeed, the allegations of the original Complaint and Amended Complaint, as well as the language of the Agreement itself, lay bare this conclusion.

Attached to the original Complaint are multiple contracts between OVC and Gruppo evidencing the relationship between the two as contractor and subcontractor. Further, OVC filed a Mechanic's Lien against the Pennsylvania Project affirmatively establishing OVC's status as a

10

subcontractor to Gruppo:[9]

> 2. Claimant, as a sub-contractor, provided labor, services, materials, or equipment (the "**Work**") for the improvement of the real property located in the **County of Indiana** at **119 Business Park, Lot 2, Center Township, Pennsylvania 15748** (the "**Property**"). The Property's Indiana County Uniform Parcel Identifier Number is **12-023-127.01A1**, and is further described as follows:
>
> > See **Exhibit A-1** attached hereto and incorporated herein.
>
> 3. The owner of the Property and improvement subject to the lien, according to Indiana County tax records is **AIR LIQUIDE ADVANCED TECHNOLOGIES U.S., LLC** ("**Owner**") whose tax mailing address is **2790 Mosside Boulevard, Suite 195, Monroeville, Pennsylvania 15146**.
>
> 4. Claimant files this Claim as a subcontractor. Claimant provided the Work under a written subcontractor agreement with **GRUPPO EF TECHNOLOGIES USA, LLC**, a New York limited liability company, whose address is **12 East 10th Street, #3R, New York City, New York 10003** (the "**Contractor**") in connection with the improvement to the Property. A copy of the most recent written subcontractor agreement, dated **January 17, 2024**, is attached hereto as **Exhibit B-1** and incorporated herein.

The Amended Complaint makes numerous references to and relies heavily as a basis for Gruppo's claims the "work" performed by OVC on the Pennsylvania Project:

- OVC "was retained to perform critical concrete and structural work in Pennsylvania, ¶29;

- OVC's work was indispensable to the Pennsylvania Project site, ¶29;

- "Prior to filing of the Complaint, [OVC] had completed over $2 million in work"; ¶32;

- OVC "furnished valuable labor, services, and materials, including concrete, sitework, and manpower," ¶43;

- ALATUS was enriched by OVC's labor, materials, and deliverables, ¶47; and that

- ALATUS accepted OVC's work, ¶51.

Section 1 of the Agreement defines "Work" as:

(i) all labor, services, storage, design, engineering, demolition, Site preparation, construction, installation, equipping, verification, training, procurement and other things and actions to be performed and/or procured, as the case may be, by Contractor as are necessary for the completion of the Facility at the Site in accordance with this Agreement, including the Specification and the Documentation, provided that Air Liquide shall obtain the Air Liquide Equipment

---

[9] Exhibit A, Affidavit, ¶12. A copy of OVC's Mechanic's Lien is attached as Exhibit F.

11

as specified in Section 4.4; (ii) the Material, transportation and storage of the Material; and ***(iii) all Work that Contractor performs through a Subcontractor.***

The Agreement for the Pennsylvania Project governs the "Work" performed by Gruppo, including (by definition) all "Work" that Gruppo furnished through its subcontractor, OVC. Consequently, Gruppo's advancement of claims ***based entirely on Work performed by OVC*** necessarily implicates, "relates to" and "touches matters" covered by the Agreement and the Parties' relationship.   See *Telecom Decision Makers*, supra; *Hutt*, supra.

There is an obvious and direct nexus between the Agreement for the Pennsylvania Project, the Pennsylvania Project, and the OVC claims that Gruppo alleges by assignment.  Absent the Agreement and relationship between Gruppo and ALATUS, the Pennsylvania Project does not exist, this dispute does not exist, and OVC's claims (and by extension the assignment of them to Gruppo) do not exist.   Gruppo must show that OVC's subcontract work was properly performed in accordance with the Pennsylvania Project Agreement to advance its assigned payment claims and that the design work, scheduling, relationships, and technical know-how that it alleges was misappropriated were for the Pennsylvania Project. There is no way Gruppo can pursue its claims without referring to the Agreements or its relationship with ALATUS; accordingly, such claims necessarily fall within the scope of the arbitration provision.   See *Fazio*, supra.

**B.     ALATUS' defense of this case would require the Court to address ALATUS' contract rights, which are the subject of binding arbitration.**

The allegations in Gruppo's Amended Complaint are so intertwined with ALATUS' contract rights under both Agreements that they cannot be independently resolved.

Agreement clauses that: (1) give ALATUS the right to terminate the Agreements (Terms and Conditions, §18.2), title to design and other project documentation (Terms and Conditions, §§3.36 and 14.1) and the right to assume subcontract agreements (Terms and Conditions, §§2.5

12

and 18.2); (2) condition payment upon the achievement of milestones (Terms and Conditions, §6.3); (3) place full responsibility for all subsurface work – the work OVC performed – squarely upon Gruppo (Terms and Conditions, §3.20); and (4) require Gruppo to timely perform the work in accordance with the project schedule and meet project milestones (Terms and Conditions, §3.1), are just some of the provisions that directly bear on the claims asserted in the Amended Complaint. Further, ALATUS has the contract right to recover liquidated damages from Gruppo, which would be an affirmative claim and an offset against any potential recovery by Gruppo. Whether as an affirmative claim or offset, ALATUS' liquidated damages claim is subject to arbitration as well.

Gruppo's Amended Complaint necessarily requires ALATUS to bring all of its contract-based claims and defenses against Gruppo – the resolution of which the Parties agreed would be subject to arbitration. Allowing this case to proceed in court would put ALATUS in an untenable position of foregoing its contractual right to arbitration so that it can assert compulsory counterclaims resulting from Gruppo's numerous breaches of contract. It would also lead to duplicative disputes, as ALATUS' and Gruppo's claims are subsumed within the arbitration it has commenced against Gruppo.

**C.** **Permitting Gruppo to circumvent arbitration will contravene well-established jurisprudence promoting and favoring the resolution of disputes by arbitration.**

In the normal course of a properly managed project, work performed by a subcontractor would be submitted to the owner by the general contractor as part of its pay application, payment would be made by owner to general contractor and general contractor would pay its subcontractor. Gruppo seeks to upend this process and recover payment itself for work performed by OVC. By setting the claims up in this convoluted way, Gruppo seeks both to avoid arbitration of its own payment claim and to avoid having to answer for its mismanagement of the Pennsylvania Project.

13

Whether pursuing its own claims or those assigned from its subcontractors, Gruppo agreed to arbitration. This is not a case in which ALATUS is attempting to force a non-signatory to engage in arbitration. Gruppo signed the Agreements, is pursuing a right of recovery for itself for claims relating to the Pennsylvania Project, and agreed to submit all unresolved "claims, disputes and other controversies arising out of or relating to this Agreement" to arbitration.

Regardless, equitable estoppel would prevent a non-signatory such as OVC from avoiding a contract's arbitration requirements while seeking a direct benefit from the contract such that OVC itself would have been bound to arbitration had it remained as plaintiff. *Great Am. Ins. Co. v. Gemma Powery Syst., LLC*, S.D. Ohio No. 1:18-cv-213, 2018 U.S. Dist. LEXIS 194987 (S.D. Ohio 2018); see also *Int'l Paper Co. v. Schwabe Dissen Maschinen & Anlagen*, 206 F.3d 411, 418 (4th Cir. 2000) (non-signatory could not avoid contractual arbitration provision where the contract "provide[d] part of the factual foundation for every claim asserted" against defendant).

Permitting Gruppo to recast its payment claims as those of its subcontractors to collect payment for work performed on the Pennsylvania Project would effectively nullify Gruppo's contractual arbitration obligation and run contrary to well-established jurisprudence promoting and favoring resolution of disputes via arbitration.

## CONCLUSION

If the Court concludes that all of Gruppo's claims are subject to arbitration, this case should be dismissed in favor of the pending arbitration or alternatively transferred to the United States District Court for the Southern District of Texas, Houston Division, and this action stayed until completion of the arbitration action of the Gruppo/ALATUS arbitration. *See e.g. Shade v. Cracker Barrel Old Country Store*, Ohio N.D. No. 4:21CV1049, 2022 U.S. Dist. LEXIS 49051 (N.D. Ohio 2022) (Judge Benita Pearson); see also *Harvey v. Rillema*, N.D. Ohio No.

14

3:23CV1079, 2023 U.S. Dist. LEXIS 131395 (discussing dismissal and transfer options for disputes involving arbitration provisions).

                    Respectfully submitted,

                    */s/ Joseph R. Spoonster*
                    Joseph R. Spoonster (#0070863)
                    Nicholas J. Horrigan (#0087345)
                    HARPST BECKER LLC
                    1559 Corporate Woods Parkway, Ste. 250
                    Uniontown, OH 44685
                    jspoonster@harpstbecker.com
                    nhorrigan@harpstbecker.com
                    (330) 983-9971
                    (330) 983-9981 (fax)

## LOCAL RULE 7.1 CERTIFICATION

The undersigned certifies that this case has been assigned to the standard track and that this Memorandum adheres to the 20-page limitations set forth in Loc. R. 7.1(f) for standard track cases.

                    */s/ Joseph R. Spoonster*
                    Joseph R. Spoonster (#0070863)

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2025, a copy of the foregoing document was submitted for electronic filing. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Clerk of Court's E-Filing System.

                    */s/ Joseph R. Spoonster*
                    Joseph R. Spoonster (#0070863)